IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| SIOUX CITY FOUNDRY COMPANY, | : | Case No. 5:20-CV-4030 |
| Plaintiff, | : | |
| vs. | : | |
| AFFILIATED FM INSURANCE COMPANY, | : | **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | : | |
| Defendant. | | |

COMES NOW the Plaintiff, Sioux City Foundry Company, and by and through the undersigned counsel, and for its Petition, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Sioux City Foundry Company (the Foundry) is an Iowa corporation with its principal place of business in Sioux City, Woodbury County, Iowa. It has locations both in Sioux City, Iowa, and South Sioux City, Nebraska.

2. Defendant Affiliated FM Insurance Company (AFM) is a property insurer and member of the FM Global Group. FM Global is a fictitious name of Factory Mutual Insurance Company, incorporated in the state of Rhode Island, with its principal place of business in Johnston, Rhode Island. The Defendant is authorized and licensed to sell insurance in the states of Iowa and Nebraska.

3. On September 28, 2016, AFM issued its insurance policy to the Foundry covering property described in the policy against all risks of physical loss or damage except as specifically excluded in the policy, none of which are applicable to this action.

4. The original policy term was from October 1, 2016 to October 1, 2017, and by General Change Endorsement effective October 1, 2017, renewed from October 1, 2017 to October 1, 2018. By another General Change Endorsement effective October 1, 2018, the expiration date of the policy was extended to January 1, 2019. Attached is a copy of the insurance policy including General Change Endorsements issued by AFM.

5. Among the Foundry's covered properties is its foundry plant located at 2400 G Street, South Sioux City, Nebraska.

6. The said policy contains no choice of law provision except as to limitation of actions against the company, wherein the policy states that the insurance laws of the jurisdiction in which the property is located shall govern. The Nebraska statute of limitations is five (5) years from date of loss. Neb. RS § 25-205(1).

6(a). Up to the point of filing the Complaint, the Foundry and AFM were actively engaged in settlement discussions in an effort to resolve the claim. AFM has waived its limitation of actions defense and is estopped from relying on same by continuing settlement negotiations beyond July 11, 2019.

For example, on August 29, 2019, AFM makes written request to perform further onsite inspection for damage resulting from the arc flash event of July 11, 2017. On September 11, 2019, AFM responds to SCF's claim of unreimbursed loss amounts by requesting in writing a formal proof of loss be submitted within the following ninety (90) days and reiterates its request to further investigate claimed damage resulting from the arc flash event. On December 6, 2019, Plaintiff requests a settlement conference. On December 13, 2019, AFM retained counsel who stated via telephone that he wants to meet with SCF to attempt resolution of the claim through a

settlement conference. On January 28, 2020, a settlement conference between SCF and AFM occurred with an exchange of monetary demand and settlement offer. On January 31, 2020, AFM proposes that the accountants for each party meet to discuss their respective business interruption calculations and methodology.

7. This court has jurisdiction over the parties and subject matter. The amount in controversy exceeds the jurisdictional minimum for this court. Venue exists in this court because the contract of insurance was made in Woodbury County, Iowa. IA Code § 616.10.

## BACKGROUND

8. The policy, which insures losses resulting from any one occurrence up to a policy limit of $70 million, covers the Foundry's property against all risks of physical loss or damage including the foundry plant located at 2400 G Street, South Sioux City, Nebraska (Plant #2).

9. There is additional coverage for debris removal, demolition and increased costs of construction, Code compliance, professional fees (accounting), and Business Interruption coverage.

10. Business Interruption (BI) coverage reimburses the actual loss sustained at the Foundry's Plant #2 for gross earnings or gross profits loss up to the policy limit subject to a deductible amount that is applied per occurrence. The deductible is calculated as 5 times the average daily value (ADV) of earnings at the Foundry's Plant #2.

11. BI coverage commences on the date on which the loss resulted in interruption of business and ends when, with due diligence and dispatch, the damaged property could be repaired or replaced and made ready for production or business operations that existed prior to the loss. In this case, the initial BI coverage terminated March 26, 2018.

12. The said policy also provides for a six-month extended period of BI coverage of gross earnings loss for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Foundry's Plant #2 business to the condition that would have existed had no loss happened. The extended period commences on the date on which the initial BI coverage would terminate.

13. On July 11, 2017, the Foundry experienced an electrical arc flash event at its Plant #2 location. It caused a large amount of fault current to flow from the transformer through a bus duct to the switchgear, causing physical damage to the bus duct and switchgear.

14. The fault current on the secondary side of the transformer flowed through the system bonding jumper connecting the transformer to the grounding system, causing fusing of the bonding jumper connector as well as fusing of the connectors comprising the grounding system. The smaller conductors comprising the grounding system were destroyed and resulted in the loss of the Plant #2 service ground.

15. On July 11 and July 12, 2017, Thompson Electric Company (TEC) initiated emergency repairs to the busbar, switchgear, and fused bonding jumper to the grounding grid.

16. Those emergency repairs consisted of bypassing the damaged bus duct with seven (7) sets of copper wire conductors per phase. TEC then repaired damage to the switchgear and replaced the ground conductors (bonding jumper) leading to the grounding system.

17. While the emergency repairs at that time restored power to Plant #2, TEC did not replace the damaged switchgear, replace the damaged busbar, nor replace the damaged grounding system, all of which are to be of like kind, size and quality.

18. Because of the loss of power to Plant #2, the plant's two electric melting furnaces were without power and were unable to circulate water necessary to cool the furnaces. The two furnaces experienced burnout and failure.

19. Emergency repairs by the furnace servicer, Ajax Tocco, were made and completed by September 17, 2017.

20. Upon completion of the emergency repairs, the Foundry started experiencing several intermittent issues that affected the utilization of the furnaces, specifically in October, 2017 and February, 2018. Ajax Tocco requested the Foundry to verify the service ground at Plant #2 because it was seeing "noise" that had not previously been present on the system prior to the arc flash event of July 11, 2017. Testing by Nebraska Public Power District and TEC verified the grounding system at Plant #2 had been damaged.

21. In February and March, 2018, TEC replaced the service grounding system and eliminated the "noise" that was affecting the furnace utilization. Full plant utilization was achieved by March 26, 2018.

22. To calculate the BI loss, AFM authorized the Foundry to hire an outside accounting firm to assist in the calculation. The firm is BDO USA, LLP. The Foundry also retained the accounting firm of Henjes, Conner & Williams, PC in Sioux City, Iowa. To date, the Foundry has not been fully reimbursed by AFM for the accounting expenses.

23. On May 3, 2019, AFM paid the Foundry $155,621.83 for the property damage loss after applying the $25,000.00 deductible. In addition, it paid $271,599.00 for BI loss after applying a deductible calculated by AFM of $94,565.00. An additional $18,887.00 in BI loss

has also been paid by AFM. Those amounts represent only partial payment of the Foundry's entire loss claim.

24. The Foundry still has unreimbursed loss amounts resulting from the arc flash event as follows:

- Parts and labor to March 26, 2018;
- Busbar replacement;
- Switchgear replacement;
- BI loss; and
- Accounting fee expense.

In addition, the Foundry will incur Code compliance costs, including equipment replacement, that is yet to be fully determined.

## COUNT I
## BREACH OF CONTRACT

25. The Foundry restates and alleges paragraphs 1 through 24 of this Petition as if fully set forth herein.

26. On the date of loss, the Foundry was insured by AFM for all risks of physical loss or damage including the July 11, 2017 arc flash event.

27. The Foundry had paid the premiums which were due to AFM and had a valid, enforceable insurance contract covering the loss.

28. The Foundry gave timely proof of loss, and/or any untimeliness has neither been waived or has not been prejudicial to AFM.

29. AFM has refused to pay the Foundry's entire loss claim per the policy.

30. AFM has breached and continues to breach its insurance contract by

      a.      denying that a single loss event occurred on July 11, 2017;

      b.      denying and not paying covered losses and property damage caused by the said arc flash event; and

      c.      denying and not paying the full value of the BI coverage.

31.    As a result of AFM's breach, the Foundry has suffered monetary harm in an amount to be proven at trial.

WHEREFORE, the Foundry respectfully requests that the Court enter judgment against AFM for damages in an amount that will fully and fairly compensate the Foundry for AFM's breaches of the Agreement; awarding all pre and post judgment interest allowed by law; awarding the costs of this action; and awarding such other and further relief as the Court deems appropriate.

## COUNT II
## FIRST-PARTY BAD FAITH

32.    The Foundry restates and realleges paragraphs 1 through 31 of this Petition as if fully set forth herein.

33.    AFM has no reasonable basis for refusing to pay the entire loss claim.

34.    AFM knew or had reason to know that there is no reasonable basis for refusing to pay the entire loss claim.

35.    As a proximate cause of said refusal to pay, the Foundry has suffered monetary harm in an amount to be determined at trial.

WHEREFORE, the Foundry respectfully requests that the Court enter judgment against AFM as follows:

1. awarding damages in an amount that will fully and fairly compensate the Foundry for AFM's breaches of the Agreement;

2. awarding all pre- and post-judgment interest allowed by law;

3. awarding the costs of this action;

4. awarding the Foundry punitive damages; and

5. awarding such other and further relief as the Court deems appropriate.

DECK & DECK, L.L.P.

BY: /s/ Paul W. Deck, Jr.
Paul W. Deck, ,Jr.     AT0002045
Benjamin J. Deck     AT0012535
505 5th Street, Suite 635
Sioux City, IA 51101
(712) 255-3573 - Telephone
(712) 255-8463 - Fax
Pdeckjr@deckanddeck.com

ATTORNEYS FOR PLAINTIFF
SIOUX CITY FOUNDRY COMPANY

**TRIAL BY JURY IS DEMANDED**

DECK & DECK, L.L.P.

BY: */s/ Paul W. Deck, Jr.*
    Paul W. Deck, ,Jr.
    Benjamin J. Deck
    505 5th Street, Suite 635
    Sioux City, IA 51101
    (712) 255-3573 - Telephone
    (712) 255-8463 - Fax
    Pdeckjr@deckanddeck.com

    ATTORNEYS FOR PLAINTIFF
    SIOUX CITY FOUNDRY COMPANY