# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SIOUX CITY FOUNDRY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>Defendant. | No. C20-4030-LTS<br><br>ORDER ON<br>MOTION TO DISMISS |

_____

## I. INTRODUCTION

This case is before me on a second motion (Doc. 25) to dismiss filed by defendant Affiliated FM Insurance Company (Affiliated). Plaintiff Sioux City Foundry Company (SCFC) has filed a response (Doc. 27) and Affiliated has filed a reply (Doc. 28). I find that oral argument is not necessary. *See* Local Rule 7(c).

## II. BACKGROUND

SCFC commenced this action on April 29, 2020, by filing a petition at law and jury demand in the Iowa District Court for Woodbury County. Doc. 3. On May 29, 2020, Affiliated removed the case to this court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. Doc. 1. SCFC and Affiliated are parties to an insurance policy (the policy). Doc. 3 at 9. SCFC alleges that Affiliated failed to pay amounts owed to SCFC for a covered loss and asserts claims for breach of contract (Count I) and first-party bad faith (Count II). Doc. 24 at 6–7, ¶¶ 25–35.

In its first motion (Doc. 5) to dismiss, Affiliated argued that SCFC failed to state a claim upon which relief may be granted because the policy includes a two-year

limitations period, measured from the inception of the loss. Doc. 5-1 at 1, ¶ 1. After Affiliated filed its motion, SCFC amended its complaint to allege that Affiliated waived, or is estopped from relying on, the contractual limitations provision. Doc. 6 at 1, ¶ 6(a). On September 14, 2020, I issued an order (Doc. 21) denying the motion to dismiss without prejudice. I agreed with Affiliated that SCFC had not alleged sufficient facts that, when accepted as true, would give rise to plausible claims of waiver or estoppel. *Id*. at 10. However, I found it appropriate to give SCFC the opportunity to amend its complaint to correct this deficiency. *Id*. SCFC then filed a second amended complaint (Doc. 24) and Affiliated now reasserts its motion to dismiss, arguing that SCFC's allegations still fall short.

### III. FACTUAL ALLEGATIONS

SCFC's amended complaint makes the following factual allegations:

SCFC and Affiliated entered into the policy on September 28, 2016, in Sioux City, Iowa. Doc. 24 at 3, ¶ 7. The original policy term was October 1, 2016, to October 1, 2017. *Id*. at 2, ¶ 4. The parties renewed the policy twice such that it extended through January 1, 2019. *Id*. The policy covered SCFC's property against physical damage or loss, debris removal, demolition, increased costs of construction, compliance costs, professional fees and business interruption losses. *Id*. at 1, ¶ 3; *id*. at 3, ¶¶ 8–9. The policy covered three SCFC properties in Iowa and one in Nebraska, Doc. 3 at 13, and included the following provision:

> **F.  LEGAL ACTION AGAINST THIS COMPANY**
>
> No suit, action or proceeding for the recovery of any claim will be sustained in any court of law or equity unless:
>
> 1.   The Insured has fully complied with all the provisions of this Policy; and

> 2. Legal action is started within two years after inception of the loss.
>
> If under the insurance laws of the jurisdiction in which the property is located, such two-year limitation is invalid, then any such legal action must be started within the shortest limit of time permitted by such laws.

*Id.* at 53. It also stated:

> **C. CONFORMITY TO STATUTE**
>
> Terms of this Policy that conflict with the statutes of the jurisdiction where the insured property is located are amended to conform to such statutes.

*Id.* at 57.

On July 11, 2017, SCFC's Nebraska property experienced an "electrical arc flash event." Doc. 24 at 4, ¶ 13. This event damaged the property, requiring numerous emergency repairs in its aftermath. *Id.* at 4–5, ¶¶ 13–19. Ensuing problems continued to afflict the property such that SCFC was not restored to full utilization of the property until March 26, 2018. *Id.* at 5, ¶¶ 20–21. With Affiliated's approval, SCFC hired outside accountants to assist in calculating the loss from this event. *Id.*, ¶ 22.

On May 3, 2019, Affiliated made payments to SCFC for property damage loss, business interruption loss and professional fees. *Id.* at 5–6, ¶ 23. On August 29, 2019, Affiliated asked to further inspect the Nebraska property. *Id.* at 2–3, ¶ 6(a). On September 11, 2019, in response to SCFC claiming unreimbursed loss amounts, Affiliated requested SCFC submit formal proof of loss and again asked to further inspect the property. *Id.* On December 6, 2019, SCFC requested a settlement conference. *Id.* On December 13, 2019, Affiliated retained counsel who contacted SCFC and expressed willingness to try to resolve the claim through settlement. *Id.* On January 28, 2020, the parties convened a settlement conference and exchanged a monetary demand and

settlement offer. *Id.* On January 31, 2020, Affiliated proposed the parties' accountants meet to discuss their business interruption calculations and methodologies. *Id.*

SCFC contends that the sum Affiliated has paid reflects only a portion of the covered loss and that Affiliated has refused to pay the full amount of the loss. *Id*. at 5–6, ¶¶ 23–24, 29. Thus, SCFC alleges in Count I that Affiliated breached the policy by denying that a single loss event occurred on July 11, 2017, denying and not paying covered losses and property damage caused by the event and denying and not paying the full value of its business interruption coverage. *Id.* at 6–7, ¶ 30. In Count II, SCFC alleges that Affiliated acted in bad faith because it had no reasonable basis to refuse to pay the entire claim and knows, or has reason to know, that it has no reasonable basis to so refuse. *Id.* at 7, ¶¶ 33–35.

## IV. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

> face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While factual "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable legal theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee,* 1 F. Supp. 3d 927 (N.D. Iowa 2014). "As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily grounds for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (quoting *Jessie v. Potter*, 515 F.3d 709, 713 n.2 (8th Cir. 2008)); s*ee also Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) ("[W]hen it 'appears from the face of the complaint itself that the limitations period has run,' a [statute of] limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss.") (quoting *Wycoff v. Menke*, 773 F.2d 983, 984–85 (8th Cir. 1985)); *Linden v. JBS USA, LLC*, No. C14-228-JAJ, 2014 WL 10040189, at *2 (S.D. Iowa Sept.

5

16, 2014) ("Motions to dismiss should not be granted on statute of limitations grounds unless noncompliance with the statute of limitations appears on the face of the complaint.") (quotation and citation omitted).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* FED. R. CIV. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.* The insurance contract attached to SCFC's state court petition is such a document and I may therefore consider it.

## V. ANALYSIS

Affiliated moves (Doc. 25) to dismiss the action based on the policy's two-year limitations provision. In addition to asserting that the doctrines of waiver and estoppel prevent Affiliated from enforcing this provision, SCFC argues (Doc. 27) that Nebraska's five-year statute of limitations governs this action such that it is timely.

### A. My Previous Order

In my previous order (Doc. 21) I arrived at two conclusions that remain relevant. First, after finding that the policy lacks a choice of law provision, I applied Iowa's most significant relations test to determine which state's laws apply to the policy. *See Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 187–188). I concluded Iowa law applies due to the number of contacts the policy has with Iowa. Doc. 21 at 7. I again

note that this conclusion does not render the limitations or conformity clause irrelevant. The clauses invoke the laws of the jurisdiction in which the property is located (in this case, Nebraska). When a contract is not ambiguous, Iowa courts enforce it as written. *Lange v. Lange*, 520 N.W.2d 113, 117 (Iowa 1994). Thus, even when Iowa law is applied to the policy, the question of whether Nebraska law invalidates the limitations provision remains.

Second, I found that if the policy's two-year limitations period is applicable, both counts fall within its scope as claims on the policy, as each count seeks damages based on the alleged discrepancy between what Affiliated has paid and what it allegedly owes. Doc. 21 at 7–8. Particular to SCFC's second count, the Iowa Supreme Court has found that a party alleging first-party bad faith, and characterizing an insurance company's denial of a claim as the bad faith act, is fundamentally making a claim on the policy. *Stahl v. Preston Mut. Ins., Ass'n*, 517 N.W.2d 201, 204 (Iowa 1994).

I find no reason to alter either of these conclusions. Thus, I will proceed to address the parties' remaining arguments.

### B.  *Does SCFC plead facts sufficient to support a claim of waiver?*

Under Iowa law, "[w]aiver is an intentional relinquishment of a known right." *In re Estate of Warrington*, 686 N.W.2d 198, 202 (Iowa 2004) (internal quotation marks omitted). The essential elements of waiver are:

> the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right. Waiver can be express, shown by the affirmative acts of a party, or implied, inferred from conduct that supports the conclusion waiver was intended.

*Id.* (quoting *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 552 (Iowa 1999) (internal quotation marks omitted)).

In *Scheetz v. IMT Insurance Co. (Mutual)*, 324 N.W.2d 302 (Iowa 1982), a homeowner's policy barred actions commenced over 12 months after the inception of a loss. *Id.* at 303. Fire damaged the home on December 18, 1974, and the parties engaged in negotiations to settle the loss. *Id.* On December 17, 1975, IMT's counsel communicated a settlement offer that the insured rejected. *Id.* IMT expressly terminated further negotiations in February 1976, but in August 1976, the insured's counsel inquired again about settlement. *Id.* The record does not indicate any further communications before the insured brought suit in January 1979. *Id.*

IMT moved for summary judgment, arguing the policy's limitations provision barred the action. *Id.* The insured responded with waiver and estoppel arguments. *Id.* IMT conceded that it may have waived the provision by sending its December 17, 1975, letter, but argued that the waiver ended once it expressly terminated settlement negotiations in February 1976. *Id.* The Iowa Supreme Court held: "It is clear to us as a matter of law, as it was to trial court, that when IMT carried the negotiations through the end of the twelve-month period it could have had no other intent than to relinquish its contractual right to limit suits to that period." *Id.* at 304. The Court also held that IMT could not retract its waiver. *Id.* at 305–06.

Framed by *Scheetz,* SCFC's allegations do not give rise to a plausible argument that Affiliated waived its right to enforce the policy's limitations provision, as all of the actions allegedly constituting waiver occurred after the limitations provision's deadline had already passed. Whether conduct allegedly constituting waiver occurs before or after a limitations provision's deadline is material:

> To operate as a waiver by the insurer of, or an estoppel from asserting, a condition in the policy limiting the time within which suit must be brought after the loss, the act or declaration relied upon must be done or made during the running of the period of limitation, or at least commenced during such period, since acts taking place entirely after the expiration of the period cannot be said to have induced the insured not to bring action within the period.

8

44A AM. JUR. 2D *Insurance* § 1927.[1]

This distinction is recognized in Iowa's caselaw. *See Scheetz*, 324 N.W.2d at 304 (in finding waiver, the court expressly noted IMT began negotiations during the 12-month period leading up to the deadline); *see also Bish v. Hawkeye Ins. Co.*, 28 N.W. 553, 555 (Iowa 1886) (approving jury instructions providing that only acts occurring before a limitations provision's deadline support finding waiver or estoppel). It is also implicit in other Iowa cases in which the parties alleging the waiver of limitations provisions have cited only conduct occurring before the deadlines. *See, e.g.*, *Brunner v. United Fire & Cas. Co.*, 338 N.W.2d 151, 153 (Iowa 1983); *Smith v. State Farm Fire & Cas. Ins. Co.*, 786 N.W.2d 520 (Table), 2010 WL 22089542, at *2 (Iowa Ct. App. 2010).

Here, the first event SCFC alleges in support of its waiver argument occurred on August 29, 2019, over a month *after* the limitations provision's deadline had passed.[2]

---

[1] *See also Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996) ("[A]cts or conduct giving rise to waiver or estoppel must have occurred within the time limitation contained in the . . . policy, rather than after such limitations have run.") (quoting *Metz v. Buckeye Union Fire Ins. Co.*, 147 N.E.2d 119, 121 (Ohio Ct. App. 1957)); *N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 477 F. Supp. 2d 576, 582 n.49 (S.D.N.Y. 2006) ("In general, to operate as a waiver by the company of, or an estoppel to assert, a condition in the policy limiting the time in which suit shall be brought after the loss, the act or declaration relied upon must be done or made during the running of the period of limitation, or at least commenced during such period, since acts taking place entirely after the expiration period cannot be said to have induced the insured not to bring action within the period.") (internal quotation marks and citation omitted) (quoting *Gardner–Denver Co. v. Dic–Underhill Constr. Co.*, 416 F. Supp. 934, 937 n.8 (S.D.N.Y.1976)); *Fountainbleau 2006, LLC v. U.S. Fire Ins. Co.*, No. 1:09-CV-1702-WSD, 2010 WL 11597704, at *8 (N.D. Ga. Dec. 21, 2010) ("Cases involving the waiver of suit-limitation provisions that had not yet expired all speak of the insured relying on the insurer's actions or being lulled into not filing suit. But it is difficult to see how an insured relies on or is lulled by actions occurring after the period for filing suit has ended.").

[2] SCFC's factual allegations concerning Affiliated's conduct before the limitations provision expired amount to nothing more than Affiliated's alleged failure to pay the full amount owed to SCFC. This alleged underpayment does not expressly or implicitly evince a desire by Affiliated to waive the limitations provision.

Doc. 24 at 2–3, ¶ 6(a). SCFC cites no case in which a court has found that conduct occurring entirely after the passage of a limitations provision's deadline could constitute a waiver. Based on their timing, SCFC's factual allegations preclude a plausible claim of waiver.

### C. Does SCFC plead facts sufficient to support a claim of estoppel?

SCFC's estoppel argument focuses on estoppel by acquiescence, "where a party, knowing of an enforceable right, neglects enforcement for such a length of time that the law implies its waiver or abandonment." *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 272 (Iowa 2002). Iowa caselaw indicates estoppel by acquiescence is closely related to, if not another name for, waiver: "That brings us to [the plaintiffs'] claim of estoppel by acquiescence, or waiver." *Id.*; *see also Westfield Ins. Cos. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 880 (Iowa 2001) ("Although [estoppel by acquiescence] bears an 'estoppel' label, it is, in reality, a waiver theory."). For the reasons set forth above, SCFC does not plead factual allegations sufficient to support a claim of waiver. Further, Affiliated has not neglected to enforce the policy's limitations provision. At the first chance it had to enforce it—SCFC's filing of this lawsuit—it did so. Therefore, SCFC does not plead factual allegations sufficient to support a claim of estoppel by acquiescence.

Iowa also "recognizes a defendant can be estopped from 'asserting the statute [of limitations] as a defense when it would be inequitable to permit the defendant to do so.'"[3] *Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 864 (Iowa 2014) (quoting

---

[3] In ruling on motions to dismiss, courts construe complaints liberally. *See, e.g.*, *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020). Because SCFC broadly asserts an estoppel theory against Affiliated's limitations defense, *see* Doc. 24 at 2–3, ¶ 6(a), I will consider whether SCFC pleads factual allegations sufficient to support a claim of equitable estoppel.

10

*Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005)). Estoppel consists of four elements:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Id.* (quoting *Hook v. Lippolt*, 755 N.W.2d 514, 524–25 (Iowa 2008)).

"Conduct amounting to false representation or concealment needs to be deceptive or fraudulent." *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 580 (Iowa 1990) (citing *Holden v. Constr. Mach. Co.*, 202 N.W.2d 348, 355–56 (Iowa 1972)). Further, the Iowa Supreme Court has recognized that while "certain conduct by an insurer may preclude the insurer from asserting a limitations period as a defense, mere denial of liability is clearly not the sort of act which estops an insurer from asserting the limitations defense." *Stahl*, 517 N.W.2d at 204 (citing *Wendt v. White Pigeon Mut. Ins. Ass'n*, 418 N.W.2d 374, 376 (Iowa Ct. App. 1987)). Acts that may estop an insurer from asserting such a defense include misleading the insured or making representations "to lull [the insured] into delaying the filing of his action until after the limitations period . . . expire[s]." *Id.* at 205. For example, in *Wendt*, the district court found the insurer had made false representations causing the insured to delay filing his action until after the limitations provision's deadline. 418 N.W.2d at 375–76. The district court found the insurer was thereby estopped from asserting this provision and the Iowa Court of Appeals affirmed. *Id.* at 376.

Here, SCFC does not allege that Affiliated concealed or misrepresented anything to induce SCFC to delay suit. The acts of communicating and entering into settlement negotiations are not inherently fraudulent or deceptive. *See, e.g.*, *Chase v. Nationwide Mut. Fire Ins. Co.*, 160 A.3d 970, 974 (R.I. 2017) ("Mere negotiations between the insurer and a claimant cannot alone justify the application of estoppel. If so, settlement negotiations would be frustrated and impeded.") (quoting *Greater Providence Trust Co.*

11

*v. Nationwide Mut. Fire Ins. Co.*, 355 A.2d 718, 720 (R.I. 1976)).[4] Nor does SCFC allege anything regarding the substance of Affiliated's communications that could support a claim of fraud or deception.

Additionally, as with its waiver argument, SCFC's factual allegations underlying its estoppel claim all pertain to events occurring after the limitations provision's deadline had passed. This timing alone precludes these events from supporting an estoppel argument:

> [The plaintiff] also complains of conduct by [the defendant's] attorney that occurred after the two-year statute of limitations had expired. This conduct cannot be a basis to estop the defendants from relying on the statute of limitations, however, because by the time this conduct occurred, [the plaintiff] had already missed the filing deadline.

*Hook*, 755 N.W.2d at 526 n.4; *see also Bish*, 28 N.W. at 555.[5]

As noted above concerning SCFC's waiver theory, its factual allegations concerning Affiliated's conduct before the limitations provision expired are limited to a claim that Affiliated paid less than what it owed to SCFC. This alleged underpayment does not evince fraud or deception. Instead it appears more akin to denying liability, which does not constitute an act estopping an insurer from asserting a limitations defense. *Stahl*, 517 N.W.2d at 204. Thus, the facts SCFC pleads are insufficient, both in substance and timing, to support a claim of estoppel, whether equitable or by acquiescence.

---

[4] *See also Hart v. Bridges*, 591 P.2d 1172, 1174 (Okla. 1979) ("Mere negotiations of course do not make out a case for estoppel.").

[5] *See also* discussion *supra* at 9 n.1; *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C. 1998) ("[A]ppellants have failed to show any misleading conduct by Landmark or any of its agents that occurred before they had already allowed the statute of limitations to lapse. Because their own inaction kept them from filing a timely complaint, they cannot say that the conduct of Landmark, occurring after the limitation period had run, somehow lulled them into not filing.").

### D. Has Affiliated properly asserted a statute of limitations defense?

#### i. *The parties' pleadings*

To properly assert a statute of limitations defense through a Rule 12(b)(6) motion, Affiliated must demonstrate that the face of the complaint reveals the limitations period has run. *See* discussion *supra* at 5–6. Affiliated argues that SCFC's complaint establishes that the contractual limitations period has run. Specifically, it notes that the limitations provision's deadline was July 11, 2019, two years after the July 11, 2017, electrical arc flash event, and that SCFC did not file this lawsuit until April 29, 2020. Affiliated contends that this limitations provision is valid under either Iowa or Nebraska law because Iowa allows reasonable limitations provisions and Nebraska invalidates such limitations provisions only when present in Nebraska-issued insurance contracts. Doc. 26 at 11–12. It further argues Nebraska courts enforce limitations provisions in foreign contracts like this one. *Id.* at 12–14.

SCFC responds that Nebraska's five-year statute of limitations applies to this action. Doc. 27-1 at 5–6. It argues (1) that the policy's conformity clause operates such that, with respect to SCFC's Nebraska property, the court should evaluate the policy as if it was issued in Nebraska, (2) that Affiliated's interpretation of the limitations provision runs contrary to SCFC's reasonable expectations, (3) that Affiliated's interpretation "eviscerates" a term of the policy and, (4) if the court finds the limitations provision ambiguous, the court should construe the policy in favor of SCFC, the insured. *Id.* at 5–7. Affiliated replies that the plain language of the policy and Nebraska's limitations statute support its argument. Doc. 28 at 4–5.

Deciding whether it is apparent from the face of the complaint that the limitations period has run requires determining what limitations period governs, implicating the interplay between contractual limitations provisions, conformity clauses and state statutes of limitations.

13

### ii. *Relevant caselaw*

Several courts have addressed this interplay. "A conformity clause has the effect of excising a provision of an insurance policy that conflicts with or is voided by state law and replacing the provision with the prevailing state statute or judicial rule of law." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 133 (2d Cir. 2018) (quoting *Lawrimore v. Progressive Direct Ins. Co.*, 627 F. App'x 253, 254 (4th Cir. 2016) (per curiam)). In the context of limitations provisions, such clauses "accommodate any jurisdiction that may have a statutory provision prohibiting language in an insurance contract restricting the time in which suit might be filed." *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 709 (6th Cir. 1992) (quoting *Smith v. Allstate Ins. Co.*, No. 92364–Q, 1987 WL 30150 (Tenn. Ct. App. Dec. 30, 1987)). Most courts considering whether conformity clauses alter contractual limitations provisions find they do not because the jurisdiction in question allows parties to contract for limitations periods shorter than those provided by statute. *See, e.g.*, *Massengill v. Shenandoah Life Ins. Co.*, 459 F. Supp. 2d 656, 660 (W.D. Tenn. 2006) (upholding contractual limitations provision after finding Tennessee does not prohibit parties from shortening time in which suit must be brought); *Fetterhoff v. Liberty Life Assurance Co.*, No. CIV.A.06-0278-CG-M, 2007 WL 1589539, at *1 (S.D. Ala. May 31, 2007) (holding similarly) (collecting cases), *aff'd*, 282 F. App'x 740 (11th Cir. 2008).

The analysis changes when state laws prohibit parties from contracting for limitations periods shorter than provided by statute. For example, in *Ocwen Loan Servicing, LLC v. Radian Guaranty, Inc.*, No. CV 16-6586, 2018 WL 684838 (E.D. Pa. Jan. 31, 2018), Ocwen serviced and Radian insured subprime mortgages. *Id.* at *1. Ocwen sued Radian for coverage and damages after Radian allegedly breached their contract and acted in bad faith by denying coverage for some mortgages. *Id.* at *2. The instruments on which Ocwen sued were loan certificates, i.e., insurance policies covering individual mortgages. *Id.* at *1. Radian moved for summary judgment, arguing in part

that some certificates contained limitations provisions barring suit. *Id.* at *3. The certificates also contained conformity clauses amending certificate terms in conflict with the laws of the state in which the certificates' associated properties were located. *Id.* at *4.

Some of the certificates covered Florida properties and Florida law voids "[a]ny provision in a contract fixing the period of time within which an action arising out of the contract may be begun at a time less than that provided by the applicable statute of limitations." *Id.* at *6 (quoting FLA. STAT. § 95.03). The court found the limitations provisions conflicted with that statute. *Id.* at *7. It proceeded to find the certificates' conformity clauses required the court to substitute Florida's statute of limitations for the contractual provisions and the court accordingly denied Radian's motion for summary judgment on those certificates. *Id.*; *see also Jenkins v. Allstate Prop. & Cas. Ins. Co.*, 448 F. App'x 977, 978–79 (11th Cir. 2011) (finding conformity clause required contractual limitations provision to be amended to comply with relevant state statute of limitations); *L & A United Grocers, Inc. v. Safeguard Ins. Co.*, 460 A.2d 587, 590 (Me. 1983) (finding similarly).

The key question, then, is whether the limitations provision at issue conflicts with the relevant state's law. Courts look for "direct" or "express" conflict, meaning the state in question forbids contractual limitations provisions shorter than what is prescribed by statute. *See, e.g.*, *Ky. League of Cities, Inc. v. Gen. Reinsurance Corp.*, 174 F. Supp. 2d 532, 540 (W.D. Ky. 2001); *Graingrowers Warehouse Co. v. Cent. Nat. Ins. Co. of Omaha, Neb.*, 711 F. Supp. 1040, 1045 (E.D. Wash. 1989) (citing *Wesselman v. Travelers Indem. Co.*, 345 A.2d 423, 424 (Del. 1975)). This inquiry involves considering whether the parties could have validly contracted for the limitations period in the state in question. *See, e.g.*, *Hawkins v. Heritage Life Ins. Co.*, 973 S.W.2d 823, 826 (Ark. Ct. App. 1998) (upholding limitations provision after recognizing "parties in Arkansas have the right to contract for something less than the statutory five-year

15

limitation period as long as the lesser filing period is reasonable."); *Graham v. Hartford Life & Accident Ins. Co.*, 677 F.3d 801, 804 (8th Cir. 2012) (considering whether the parties could validly contract for the limitations period in question under Arkansas law); *Webb v. Ky. Farm Bureau Ins. Co.*, 577 S.W.2d 17, 19 (Ky. Ct. App. 1978) (upholding contractual limitations provision in part because "there is a solid line of case law in Kentucky that upholds the validity of contractual terms that provide for shorter limitation periods than the general statute of limitations").

### iii. *Application*

The relevant Nebraska statute states:

> No insurance company shall issue in this state any policy or contract of insurance containing a provision, stipulation or agreement that such policy shall be construed according to the laws of any other state or country, or any provision limiting the time within which an action may be brought to less than the regular period of time prescribed by the statutes of limitations of this state, unless otherwise prescribed by this chapter.

NEB. REV. STAT. § 44-357. There appears to be no dispute that "the regular period of time prescribed by the statutes of limitations of [Nebraska]" is five years. NEB. REV. STAT. § 25-205(1).

Affiliated is correct that it did not issue the policy in Nebraska. But with respect to SCFC's Nebraska property, the cases discussed above indicate that the relevant inquiry is whether the parties could have entered into the policy, with its two-year limitations provision, in Nebraska. The answer is no. *See, e.g.,* NEB. REV. STAT. § 44-357; *Dunlop Tire & Rubber Corp. v. Ryan*, 108 N.W.2d 84, 88 (Neb. 1961); *Wulf v. Farm Bureau Ins. Co. of Neb.*, 205 N.W.2d 640, 641–42 (Neb. 1973). The core of a conformity clause is that it "emphasizes that parties cannot contract to do what the state legislature has forbidden." *Thomas*, 974 F.2d at 709. Nebraska has clearly forbidden this kind of limitations provision. Thus, there is a direct conflict.

16

Affiliated contends, however, that Nebraska courts routinely honor limitations provisions in foreign insurance contracts. Doc. 26 at 13–14 (citing *Dunlop Tire & Rubber Corp.*, 108 N.W.2d at 89; and *Avondale v. Sovereign Camp W. O. W.*, 279 N.W. 355, 358 (Neb. 1938)). These cases make no mention of conformity clauses and Affiliated's argument simply ignores how those clauses operate. The policy's conformity clause provides: "Terms of this Policy that conflict with the statutes of the jurisdiction where the insured property is located, are amended to conform to such statutes." Doc. 1-1 at 60. With regard to any covered properties located in Nebraska, this clause thus operated to conform the policy to Nebraska law when it was issued on September 28, 2016. *Cf. Allstate Ins. Co. v. Boston Whaler, Inc.*, 510 N.E.2d 1180, 1183 (Ill. App. Ct. 1987) ("[T]he state law conformity clauses in the policies applied only to laws in effect when plaintiff issued the policies.") (illustrating conformity clauses operate when the policy is issued); *Norton v. Home Ins. Co.*, 320 A.2d 688, 693 (Me. 1974) ("We may say, then, that by agreement, rather than merely by mandate of the statute, the 12-month policy limitation was automatically 'amended' to comply with [statute]."). Therefore, with respect to SCFC's Nebraska property, the policy's two-year limitations provision simply does not exist.

This is consistent with the plain meaning and ordinary understanding of the limitations provision's language. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013) ("The plain meaning of the insurance contract generally prevails.") (citing *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 682 (Iowa 2008)); *T.H.E. Ins. Co. v. Estate of Booher*, 944 N.W.2d 655, 662 (Iowa 2020) ("An insurance contract . . . is to be interpreted from the standpoint of an ordinary person, not a specialist or expert.") (citing *Witcraft v. Sundstrand Health & Disability Grp. Benefit Plan*, 420 N.W.2d 785, 790 (Iowa 1988)), *reh'g denied* (June 29, 2020). The policy provides, in pertinent part: "If under the insurance laws of the jurisdiction in which the property is located, such two-year limitation is invalid . . . ." Doc. 3 at 53. This

language, which specifically incorporates "the insurance laws of the jurisdiction in which the property is located," is not complex. An ordinary person would understand it to mean that with regard to property located in Nebraska, for example, the two-year limitation does not apply if it is not permitted by the insurance laws of Nebraska.

In short, by the express terms of its own conformity clause, the policy's limitations provision must be amended because it conflicts with the insurance laws of Nebraska, as the parties could not have validly contracted for that provision in Nebraska. Because this case involves property located in Nebraska, that state's five-year statute of limitations applies. Affiliated's motion to dismiss must be denied.

## VI. CONCLUSION

For the reasons set forth herein, Affiliated's motion (Doc. 25) to dismiss is **denied**.

**IT IS SO ORDERED.**

**DATED** this 19th day of November, 2020.

_____
Leonard T. Strand, Chief Judge